610 S.E.2d 1

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Jim JONES, Defendant Below, Appellant.**

No. 31546.

Supreme Court of Appeals of
West Virginia.

Submitted April 27, 2004.

Decided June 22, 2004.

Concurring Opinion of Justice
Albright June 30, 2004.

Darrell V. McGraw, Jr. Esq., Attorney General, Kelley M. Goes, Esq., Assistant Attorney General, Charleston, for Appellee.

Paul S. Detch, Esq., Lewisburg, for Appellant.

**PER CURIAM.**

Appellant and Defendant below, Jim Jones, appeals the November 4, 2002, order of the Circuit Court of Greenbrier County in which he received 1 year of probation and 100 days of confinement in the Southern Regional Jail for the offenses of receiving stolen property in an amount less than $1,000 and conspiracy to receive stolen property in an amount less than $1,000. Appellant alleges that the trial judge violated his constitutional right against self-incrimination by requiring him to admit criminal responsibility in order to avoid the 100 days of incarceration. After consideration of the matter, we find no error and affirm the circuit court's order.

## I.

### FACTS

Jim Jones, Appellant and Defendant below, was found guilty by a Greenbrier County jury of the two misdemeanor offenses of receiving stolen property, i.e., a four-wheel recreational vehicle, of less than $1,000 in value and conspiracy to receive stolen property of less than $1,000 in value.[1] Appellant testified at trial that he purchased the stolen four wheel recreational vehicle for what he thought was fair market value, and that he had no reason to believe it was stolen.[2]

At the sentencing hearing, Appellant moved for probation. Prior to sentencing Appellant, the trial judge stated in pertinent part:

... I'm disturbed by the fact that you have failed to take responsibility for your action. And I believe anyone who deserves—who asks to be considered for probation, should be one who says, "I have made a mistake, but I've learned my lesson. I'm going to amend my ways." And I certainly recognize your right to say, "Well, I didn't do it, and I was wrongly convicted." But it goes

---

1. Appellant was originally indicted with his father and adoptive brother for two felony offenses of receiving stolen property and conspiracy to receive stolen property. Appellant's father was acquitted by a jury verdict. After Appellant's trial, his adoptive brother pled no contest to the two misdemeanor charges.

2. Appellant explains in his brief that a State's witness testified that the witness had stolen a four wheel recreational vehicle and delivered it to Appellant, his father, and adoptive brother, and that these three knew it had been stolen allegedly because the ignition switch had been removed.

very clearly to say that twelve individuals were convinced beyond a reasonable doubt otherwise. And twelve individuals, in I believe to be a fair trial, were convinced that you were guilty of receiving stolen property as well as being guilty of conspiracy to receive stolen property.

The trial judge sentenced Appellant to one year of incarceration and a $1,000 fine for the first count, and one year of incarceration and a $500 fine for the second count, with the sentences to run concurrently. All but 100 days of the sentences were suspended and Appellant was placed on probation for one year. One of the conditions of probation is that Appellant is to serve 100 days of jail time at the end of the one-year probationary period. The trial judge then explained:

> Mr. Jones, it's my judgment that because of your failure to accept responsibility, that you are in need of some correctional treatment. I believe it's best served at the end of your probationary period. In the event that you choose to come clean, I'd be willing to reconsider that.... You've got one year to decide whether or not you want to serve time in jail.

The circuit court's November 4, 2002, sentencing order, which contains nothing about Appellant accepting responsibility for his conduct, provides, in part, as follows:

> 4. [Defendant's concurrent one-year sentences] are hereby **SUSPENDED**, except for 100 days confinement in Southern Regional Jail, to be served as a condition of probation at the end of a term of probation for one (1) year under the following terms and conditions: [3]
> a. Defendant shall violate no law of this State, of any other state, of the United States or any political subdivision thereof;
> b. Defendant shall abide by the rules and regulations of the probation department of this Court;
> c. Defendant shall abstain from the use of all alcohol, drugs, marijuana and other controlled substances, unless prescribed pursuant to a valid prescription lawfully issued by an attending physician;

> d. Defendant shall submit to random screenings of his blood, breath or urine at his own expense, and immediately upon the request of the probation department of this Court;
> e. Defendant shall participate in any counseling deemed appropriate and necessary by the probation department of this Court;
> f. Defendant must serve 200 hours of community service;
> g. Defendant shall pay a probation fee of thirty dollars ($30.00) per month;
> h. Defendant must pay all fines and costs;
> i. Defendant must not associate with co-defendants in this matter, except for his father;
> j. Defendant must avoid associating with persons of questionable character, especially those dealing in stolen property or controlled substances[.]

(Footnote added.). This Court granted a stay of the sentence only as to the 100 days of incarceration by order of June 18, 2003, pending this appeal.

## II.

### STANDARD OF REVIEW

We have recognized that "[e]xcept for clear statutory exceptions ... the matter of probation [is] within the sound discretion of the trial court." *State v. Wotring,* 167 W.Va. 104, 118, 279 S.E.2d 182, 192 (1981) (citation omitted). Therefore, "[t]he Supreme Court of Appeals reviews sentencing orders ... under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syllabus Point 1, *State v. Lucas,* 201 W.Va. 271, 496 S.E.2d 221 (1997). We also have held that "[s]entences imposed by the trial court, if within statutory limits and if not based on some unpermissible factor, are not subject to appellate review." Syllabus Point 4, *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982). In the instant case, Appellant avers

---

**3.** Incarceration as a condition of probation is specifically provided for by W.Va.Code § 62–12– 9(b)(4) (2001).

that the trial ·judge used a constitutionally impermissible factor in deciding to sentence him to 100 days of incarceration. This is a question of law which this Court reviews *de novo*. *See* Syllabus Point 1, in part, *State v. Duke*, 200 W.Va. 356, 489 S.E.2d 738 (1997) ("questions of law ... are subject to a *de novo* review.").

## III.

## DISCUSSION

■ Appellant's sole assignment of error is that the trial judge erred in requiring him, as a condition of avoiding incarceration for 100 days, to admit criminal responsibility. According to Appellant, the trial judge is violating his Fifth Amendment[4] right against being compelled to give evidence against himself by forcing him to choose between admitting criminal responsibility, which he insists includes admitting that he committed perjury at trial, or serving a sentence of 100 days of incarceration. In support of his position, Appellant cites *State v. Imlay*, 249 Mont. 82, 813 P.2d 979 (Mont.1991). In *Imlay*, the Montana Supreme Court held that a defendant could not, as a condition of his suspended sentence, be compelled to admit that he was guilty of the crime of which he had been convicted. This was so for three reasons. First, the defendant had the right to challenge his conviction and an admission of guilt could be used against his appeal. Second, the reality of any admission would be in doubt because of the compulsion surrounding it. Third, an admission of guilt would not only violate the protections of the Fifth Amendment, but it would also constitute committing or admitting perjury.

■ Initially, we note that Appellant's sentence of 100 days of confinement in the regional jail is a condition of his probation. Concerning probation generally, this Court has recognized that "[p]robation is a matter of grace and not a matter of right." Syllabus Point 1, *State v. Rose*, 156 W.Va. 342, 192 S.E.2d 884 (1972). *See also* Syllabus Point 2, *State ex rel. Strickland v. Melton*, 152 W.Va.

500, 165 S.E.2d 90 (1968) (holding that "[p]robation is not a sentence for a crime but instead is an act of grace upon the part of the State to a person who has been convicted of a crime."); *State v. Loy*, 146 W.Va. 308, 318, 119 S.E.2d 826, 832 (1961) (opining that "[t]he authorities are clear that a defendant convicted of a crime has no absolute right to probation, probation being a matter of grace only" (citations omitted)). We have characterized probation as "simply one of the devices of an enlightened system of penology which has for its purpose the reclamation and rehabilitation of the criminal." *State ex rel. Strickland*, 152 W.Va. at 506, 165 S.E.2d at 94. Finally, we have said that a circuit court's discretionary authority in imposing conditions of probation must be reasonably exercised. Specifically, we held in Syllabus Point 6 of *Louk v. Haynes*, 159 W.Va. 482, 223 S.E.2d 780 (1976) that "W.Va.Code, 62–12–9, *as amended*, permits a trial judge to impose any conditions of probation which he [or she] may deem advisable, but this discretionary authority must be exercised in a reasonable manner."

■ Appellant essentially complains that the condition that he serve 100 days in jail is impermissible because it is based solely on the fact that the trial judge was disturbed by Appellant's failure to accept responsibility for his actions. However, this Court has identified remorse or the lack thereof as a factor to be taken into account by a trial judge when sentencing a defendant. In Syllabus Point 2, in part, of *State v. Buck*, 173 W.Va. 243, 314 S.E.2d 406 (1984), we held,

> Disparate sentences for codefendants are not per se unconstitutional. Courts consider many factors such as each codefendant's respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age and maturity), and *lack of remorse*.

(Emphasis added). In *State v. Mann*, 205 W.Va. 303, 518 S.E.2d 60 (1999), the defendant was charged with aggravated robbery.

---

4. According to the Fifth Amendment of the Constitution of the United States, in part, "[n]o person ... shall be compelled in any criminal case to be a witness against himself[.]" The corresponding provision in the Constitution of West Virginia is found at § 5, Art. III.

**670**

At trial, the defendant testified and denied his involvement in the robbery. The jury found the defendant guilty and the trial court sentenced him to thirty years' imprisonment. On appeal, this Court ruled that the sentence was not disproportionate to the crime and explained that the defendant "has refused to express any remorse for his crime." *Mann*, 205 W.Va. at 316, 518 S.E.2d at 73. *See also State v. Phillips*, 199 W.Va. 507, 515, 485 S.E.2d 676, 684 (1997) (upholding 140–year sentence for conviction of two counts of aggravated robbery and one count of kidnaping and noting that "trial judge, who was able to observe Phillips' demeanor, concluded that Phillips felt no remorse for his actions"); *State v. Brown*, 177 W.Va. 633, 642, 355 S.E.2d 614, 623 (1987) (affirming 60–year prison term for convictions at trial for the crimes of aggravated robbery and sexual abuse in the first degree and noting that the defendant "expressed no remorse for the crimes which had been committed or sympathy for the victim"); *State v. Black*, 175 W.Va. 770, 774, 338 S.E.2d 370, 374 (1985) (upholding 20–year sentence for kidnaping and 15–year sentence for aggravated robbery where trial judge explained to defendant ... "[Y]ou don't have any conscience. I feel that you are still not even sorry for things you did ... [Y]ou have never shown any real remorse for the thing you have done.").

■ This Court also has held that a trial court may consider a defendant's false testimony at trial when determining his or her sentence. In Syllabus Point 2 of *State v. Finley*, 177 W.Va. 554, 355 S.E.2d 47 (1987), we held that "[a] sentencing judge, in evaluating a defendant's potential for rehabilitation and in determining the defendant's sentence, may consider the defendant's false testimony observed during the trial." We relied upon this rule in *State v. Goff*, 203 W.Va. 516, 509 S.E.2d 557 (1998), to reject the defendant's assertion that the trial court wrongly penalized him for refusing to give up his right against self-incrimination during the trial. In *Goff*, the defendant testified at trial and denied having any involvement in the sexual crime with which he was charged. The jury returned a verdict finding the defendant guilty of sexual assault in the first degree. At the sentencing hearing, the de-

fendant exercised his right of allocution and spoke at length denying his guilt. The trial court sentenced the defendant to thirty-five years of imprisonment and stated:

I'm rejecting any motion of probation. I'm further rejecting any other matters concerning a lesser sentence or referral to the youthful offenders facility.... You, sir, will not admit the crime you have been convicted of. Therefore there is no rehabilitation.

203 W.Va. at 519, 509 S.E.2d at 560. Thereafter, the defendant filed a motion for reconsideration of the sentence in which he admitted his offense. The trial court denied the motion and stated as one of its reasons for doing so:

The Court looking at the age of the victim and the defendant's refusal to admit his crime and show remorse during the trial, at sentencing, and only reversing his posture for purposes of the hearing for reconsideration leads the Court to believe that the original sentence imposed is appropriate.

203 W.Va. at 520, 509 S.E.2d at 561. As noted above, this Court upheld the sentence.

Applying the above law to the instant facts, we believe that the trial judge's comments to the Appellant simply indicated his belief that Appellant had not been completely candid during his trial testimony as well as his concern that Appellant failed to show any remorse for the conduct leading to his convictions. Absent any effort by Appellant to rectify his previous allegedly less than forthright testimony or to show remorse for his conduct, the trial judge concluded that Appellant deserved to spend some time in jail. To the extent that the trial judge's comments are ambiguous, we construe them in a way that makes them reasonable, effective, conclusive, and in accord with the applicable law. *See Culbertson v. Board of County Com'rs of Salt Lake County*, 44 P.3d 642, 648 (Utah 2001) (opining that "[w]here construction is called for, it is the duty of the court to interpret an ambiguity [in a manner that makes] the judgment more reasonable, effective, conclusive and [that] brings the judgment into harmony with the facts and the law." (Citation omitted.)). In light of our long-standing practice of sentencing more leniently those defendants who evidence contri-

tion, we do not believe that the trial judge abused his discretion or erred as a matter of law in sentencing Appellant to 100 days in jail.

As stated previously, Appellant cites for support the Montana case of *State v. Imlay*.[5] We do not find *Imlay* to be persuasive because its facts differ significantly from the instant case. In *Imlay*, a condition of the defendant's suspended sentence was that he complete a sexual treatment program in which he had to admit that he was guilty of the crime for which he had been charged. When the defendant refused, his suspended sentence was revoked. In the instant case, there is no such condition attached to Appellant's suspended sentence. Whether or not Appellant accepts responsibility for his conduct, he receives the benefit of receiving one year of probation instead of serving that time in jail. In other words, there is no penalty to Appellant for failure to accept responsibility—his probation is not being revoked and his suspended sentence is not being reinstated.

Also, unlike in *Imlay*, it is not clear from the record in the instant case that the trial judge was asking Appellant to admit guilt of the crimes for which he was convicted. For example, when Appellant's counsel spoke on his behalf at the sentencing hearing, he stated that,

> There's nothing here that would lead anybody to believe it's anything other than a poor judgment on a day. We would sub-

mit, your Honor, that may have been poor judgment for which he has to take some responsibility.... There's nothing that indicates that he has not learned by this event that should hopefully correct his judgment.

When asked if he had anything to say for himself, however, Appellant declined to speak. We believe that the trial judge simply desired Appellant to express remorse or contrition for the type of poor judgment that caused a jury to conclude that Appellant purchased a four-wheel recreational vehicle either knowing it to be stolen or with reason to believe it was stolen.

■ Finally, the *Imlay* court noted that in an earlier case it cited with approval the rule of law that "[w]hile the sentencing judge may take into account his belief that the defendant was not candid with the court this is to be distinguished from the rule that a sentence may not be augmented because a defendant refuses to confess or invokes his privilege against self-incrimination." 249 Mont. at 88–89, 813 P.2d at 984 (*quoting In the Matter of Jones*, 176 Mont. 412, 578 P.2d 1150 (1978) (citations omitted)). We believe the instant case is one in which the trial judge simply took into account Appellant's lack of candor.[6]

## IV.

## CONCLUSION

In sum, we previously have held that a trial judge may take into account a defen-

---

5. Appellant also cites *Thomas v. United States*, 368 F.2d 941 (5th Cir.1966) for support. In *Thomas*, the Fifth Circuit vacated a sentence where the sentencing judge indicated, "[i]f you will come clean and make a clean breast of this thing for once and for all, the Court will take that into account in the length of sentence to be imposed." 368 F.2d at 944. We do not find *Thomas* applicable to the instant facts. The defendant in *Thomas* was sentenced to the maximum term permitted by law, whereas Appellant was sentenced to a term of only 100 days in jail instead of the maximum of one year for each offense. Also, the Fifth Circuit indicated that its decision was based on the exercise of its supervisory powers over federal district courts and not the denial of constitutional rights. *See Thomas*, 368 F.2d at 947.

6. In a case, unlike the one before us, where a defendant actually is compelled to admit his or her guilt or admit to testifying falsely at trial, the

admissions cannot be used against the defendant in any way such as to subsequently charge the defendant with perjury. Where a trial judge seeks to compel a defendant to give evidence against himself or herself, the judge may grant to the defendant immunity as provided for in W.Va. Code § 57-5-2 (1923), which states:

> In any criminal proceeding no person shall be excused from testifying or from producing documentary or other evidence upon the ground that such testimony or evidence may criminate or tend to criminate him, if the court in which he is examined is of the opinion that the ends of justice may be promoted by compelling such testimony or evidence. And if, but for this section, the person would have been excused from so testifying or from producing such evidence, then if the person is so compelled to testify or produce other evidence and if such testimony or evidence is self-criminating, such self-criminating testimony or evidence shall not be used or receivable in evi-

dant's remorse, or the lack thereof, as well as a defendant's false testimony at trial when determining his or her sentence. We find that the trial judge did nothing more than this under the specific facts of this case. Therefore, we conclude that the trial judge did not violate Appellant's Fifth Amendment right against self-incrimination by compelling him to give evidence against himself. Having found no infirmity with the sentence herein, we affirm the November 4, 2002, sentencing order of the Circuit Court of Greenbrier County.

Affirmed.

## ALBRIGHT, Justice, concurring.

### (Filed June 30, 2004)

I reluctantly concur in the decision of this case because our jurisprudence has generally recognized the propriety of a sentencing circuit judge taking into account a defendant's failure to admit the commission of an offense for which he or she has been convicted by a jury. I especially recognize the propriety of such a consideration as part of the sentencing decision where the sentencing court is convinced that a convicted person actually lied during the trial of the case. Nevertheless, I urge caution.

In several cases throughout the country in recent months it appears that persons convicted of offenses—sometimes very serious offenses—have later been cleared of those charges by the evolving technology surrounding DNA testing. In one such case a convicted person was denied parole on multiple occasions because, as it turned out, he truthfully and correctly refused to acknowledge guilt of a crime he did not commit.

In the case before us the sentencing judge refused to consider lighter sentences or alternative dispositions because the defendant failed to admit guilt. The judge publicly announced that he would consider a lighter sentence if the defendant admitted guilt. Presumably, had the defendant admitted guilt, the judge felt that it was possible, if not probable, that some lighter sentence or alternative treatment of the defendant would have satisfactorily protected the public interest, served as sufficient punishment, and promoted the interests of both the defendant and society.

I respectfully submit that the judge could have entertained such considerations by simply assuming the guilt of the defendant. Having made such an assumption, the question remains what sentence would adequately protect the public interest, appropriately punish the defendant, and promote the interests of both the defendant and society.

In recent public remarks United States Supreme Court Associate Justice Anthony M. Kennedy called for a re-examination of sentencing practices throughout the country, including especially the so-called "Federal Sentencing Guidelines." Among other things, Justice Kennedy pointed to the high number of persons incarcerated in the United States compared to other western democracies. Justice Kennedy has a point—a very important point.

I am authorized to state that Justice Starcher joins in this concurring opinion.

dence against him in any proceeding against him thereafter taking place other than a prosecution for perjury in the giving of such evidence, and the person so compelled to testify or furnish evidence shall not be prosecuted for the offense in regard to which he is so compelled to testify or furnish evidence, and he shall have complete legal immunity in regard thereto.
This Court has held that,
Code, 57–5–2, is comprehensive in its terms, both in divesting a witness, who is compelled to give self-criminating testimony or produce evidence which will criminate him, of the privilege of refusing to so testify or produce such

evidence, which the witness has under Article V (Fifth Amendment) of the Constitution of the United States, and Section 5, Article III of the Constitution of West Virginia that "No person * * * shall be compelled in any criminal case to be a witness against himself * * * ", and in providing, *inter alia*, that a person so compelled to testify or to furnish such evidence shall not be prosecuted for the offense in regard to which he is so compelled to testify or furnish evidence, and in clothing such involuntary witness with complete immunity in regard to such compelled self-criminating evidence. Syllabus Point 3, *State v. Abdella*, 139 W.Va. 428, 82 S.E.2d 913 (1954).